IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNNA PALERMO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 3:25-cv-00499 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| LUXOR STAFFING, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Pending before the Court is a motion to dismiss (Doc. No. 10, "Motion") Plaintiff's

Complaint (Doc. No. 1), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed

by Defendant, Luxor Staffing, Inc. Defendant filed a memorandum in support of the Motion (Doc.

No. 11, "Memorandum"), and Plaintiff filed a response in opposition to the Motion (Doc. No. 17,

"Response"), whereafter Defendant filed a reply in support of the Motion (Doc. No. 18, "Reply").

For the reasons provided herein, the Court will **deny** the Motion.[1]

---

[1] In her Response, Plaintiff sought leave to amend her complaint. (Doc. No. 17 at p. 9). The Court declines to herein delve into Plaintiff's request to amend the complaint. Moreover, the Court advises Plaintiff that separate motions must be filed when disparate relief is sought.

<u>FACTS AS ALLEGED IN THE COMPLAINT</u>[2]

This action was filed against Defendant by Plaintiff, Johnna Palermo, asserting claims of hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981[3] ("Section 1981").[4] (Doc. No. 1 at pp. 6-9). Plaintiff was hired by Defendant: a provider of temporary staffing that serves over 400 clients and has more than 500 employees. (*Id.* at ¶¶ 9-10). Defendant recruits and hires employees on behalf of its clients who are looking to fill open positions. (*Id.* at ¶ 11). Once Defendant places its employees with its clients, Defendant remains responsible for paying the wages and providing the benefits to the personnel[5] that Defendant staffs with its clients. (*Id.*).

---

[2] The facts contained in this section come from Plaintiff's complaint (Doc. No. 1, "Complaint"). For purposes of the instant Motion and pursuant to the typical mechanisms of assessing motions under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the facts alleged in the Complaint as true. But the Court does not accept as true any legal conclusions (even if couched as facts). As for any representation in the Complaint that the Court is *not* accepting as true, the Court generally identifies it by qualifying it (as, for example, "Plaintiff alleges") to denote that it is not being taken as true but rather is set forth to indicate what Plaintiff *claims* to be true. Throughout this Order, except as indicated in the next sentence, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even with the awareness that any such alleged fact may ultimately prove false. Having said that, at times when assessing whether Plaintiff has alleged factual matter sufficient to support her respective claims, the Court does point out that it is basing its assessment on the facts alleged in the Complaint; in that particular context, the Court does use the phrase "Plaintiff alleges" to proceed the facts alleged, even though the Court is taking those facts as true for purposes of the Motion.

[3] "Section 1981 [was] originally passed as the Civil Rights Act of 1870," *Turner v. Nat'l R.R. Passenger Corp.*, 181 F. Supp. 2d 122, 127 (N.D.N.Y. 2002), which is not to be confused with the Civil Rights Act of *1964*.

[4] Count III of Plaintiff's Complaint is titled "COUNT III Violation of 42 U.S.C. § 1981 Discrimination, Hostile Work Environment and Retaliation." (Doc. No. 1 at p. 8 ). From this, it would appear Plaintiff was bringing three separate claims under Section 1981: (1) general discrimination, (2) hostile work environment, and (3) retaliation. (*Id.*). However, Plaintiff has seemingly clarified via her Response that she intended to bring only claims of hostile work environment and retaliation, and not also a general discrimination claim separate and apart from her hostile work environment and retaliation claims. (Doc. No. 17 at p. 10 ("Plaintiff, in her Complaint, brought claims of [(1)] Hostile Work Environment and [(2)] Retaliation in violation of Title VII (Counts I-II), as well as violations of 42 U.S.C. § 1981 (Count III).")).

[5] Plaintiff here uses the word "personnel." The Court construes this term to mean "employees."

One of Defendant's clients was Pyramids Wholesale ("Pyramids"). (*Id.* at ¶ 12). Pyramids contacted Defendant, seeking to hire a paralegal. (*Id.* at ¶ 13). Thereafter, Defendant ran an advertisement for the paralegal role, interviewed Plaintiff for the role, and hired Plaintiff for the role. (*Id.* at ¶¶ 13-14). Thereafter, Plaintiff "accepted the assignment from Defendant to work at Pyramids as a [p]aralegal." (*Id.* at ¶ 15). Pyramids would report Plaintiff's time sheets and hourly rate to Defendant, who then paid Plaintiff directly. (*Id.* at ¶ 16).

Almost immediately after starting, Plaintiff was harassed by Pyramids' CEO, George Mikhail. (*Id.* at ¶ 18). The Complaint describes the inappropriate behavior as follows:

> 19. The harassment was both sexual and racial in nature and included both physical assault and verbal harassment.
>
> 20. Mr. Mikhail required that Ms. Palermo give him a hug every morning and tried to kiss her on her mouth multiple times.
>
> 21. When Mr. Mikhail would forcefully and unwelcomingly hug Ms. Palermo, she could feel his erect penis against her body and he would say things like, "just let me do it."
>
> 22. Mr. Mikhail also made sexual comments to Ms. Palermo such as, "I need to fuck every day" and frequently commented on her "big ass."
>
> 23. Additionally, Mr. Mikhail made racist comments to Ms. Palermo, including "why [she] speaks to him like a n*gger."
>
> 24. After Ms. Palermo denied Mr. Mikhail's sexual advancements, Mr. Mikhail reduced her wages to $25 per hour. Luxor agreed to this reduction.
>
> 25. Luxor was aware of this pay reduction and, upon information and belief, did not inquire into why her pay was reduced drastically.
>
> 26. Mr. Mikhail promised to pay Ms. Palermo, directly, "bonuses" on her work, outside of the payroll paid by Luxor. He, in fact, never paid her any bonuses.
>
> 27. Instead, he increased his scrutiny over Ms. Palermo's work, micromanaged her, and increased his hostile comments to her. When she objected, he told her that he was decreasing her wages again to $17 per hour.

(*Id.* at ¶¶ 19-27).

On September 5, 2023, Plaintiff reported the harassment to Luxor by reporting such to "management." (*Id.* at ¶¶ 28, 52). Specifically, Plaintiff informed Elizabeth Aparico—a recruiter working for Defendant—that Mr. Mikhail "made sexual comments to her, had touched her sexually, and had made racist remarks to her." (*Id.* at ¶ 28). Plaintiff indicated "how uncomfortable Mr. Mikhail made her feel and how upset she was at the outrageous treatment." (*Id.*). Ms. Aparico told Plaintiff that "other females had made complaints of Mr. Mikhail while staffed at Pyramids and that Luxor failed to take action." (*Id.* at ¶ 29). More specifically, when Plaintiff informed Ms. Aparico that Mr. Mikhail retaliated against Plaintiff by reducing her pay after she "rebuffed his sexual advances," Ms. Aparico responded, "[t]hat's what he did to the other girl. She complained and he fired her." (*Id.* at ¶ 31). Plaintiff alleges that after Plaintiff reported Mr. Mikhail's conduct to Defendant, Defendant "took no action to investigate, respond to, or eliminate the sexual harassment and retaliation." (*Id.* at ¶ 32). However, following Plaintiff's report of harassment, Defendant instructed Plaintiff not to return to Pyramids, assuring Plaintiff that Defendant would find her another job. (*Id.* at ¶¶ 33, 52-54, 64).

Thereafter, on September 7, 2023,[6] Plaintiff went to Defendant's office to provide a written statement. (*Id.* at ¶ 34; Doc. No. 17 at p. 2). While Plaintiff was providing her written statement to Defendant, Plaintiff learned that two other staff members were similarly harassed by Mr. Mikhail and that former employees of Defendant reported

---

[6] Although the Complaint states that Plaintiff provided the aforementioned written statement to Defendant on September 7, *2025*, (Doc. No. 1 at ¶ 34), the Court recognizes that the year reflects a typo and instead should read "September 7, *2023*." The Court so concludes based on the allegations made in both the Memorandum and the Response—wherein both Plaintiff and Defendant clarify that the written statement was provided on September 7, 2023. (Doc. No. 11 at p 4 ("Plaintiff did come to the office on September 7, 2023, and provided a written statement containing detailed allegations of Mikhail's harassment and wrongful conduct."); Doc. No. 17 at p. 2 ("Plaintiff also met with two other staff members at [Defendant's] office on September 7, 2023, to be interviewed and provide a written statement detailing the harassment she experienced.")).

harassment by Mr. Mikhail to Defendant. (Doc. No. 1 at ¶ 35). As instructed, Plaintiff thereafter reached out to Defendant regarding a future assignment; however, she never received a response from Defendant. (*Id.* at ¶¶ 33, 36-38). Instead, Defendant has refused "to offer her any clerical assignments after she made complaints of harassment." (*Id.* at ¶ 54).

On April 19, 2024, Plaintiff filed with the U.S. Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination ("Plaintiff's Charge of Discrimination") against Defendant, wherein she "alleged race and sex discrimination and harassment, and retaliation." (*Id.* at ¶ 39). On June 21, 2024, Defendant filed with the EEOC a Position Statement ("Defendant's Position Statement") in response to Plaintiff's Charge of Discrimination. (*Id.* at ¶ 40). Defendant's Position Statement falsely stated that it was unaware of complaints made by Plaintiff and/or other employees. (*Id.* at ¶ 41). Thereafter, Plaintiff received a Notice of Right to Sue ("Notice of Rights"). (*Id.* at ¶ 7).

<u>PROCEDURAL BACKGROUND</u>

On May 1, 2025, Plaintiff filed the Complaint to initiate the instant action. The Complaint sets forth three separate counts: hostile work environment in violation of Title VII (Claim I), retaliation in violation of Title VII (Claim II), and hostile work environment and retaliation in violation of Section 1981 (Count III).[7] In the Complaint, Plaintiff alleges

---

[7] As will be discussed in a later footnote (*infra* n. 17), the Title VII and Section 1981 analysis for each kind of claim (hostile work environment and retaliation) will be conducted simultaneously. In other words, the Court will conduct one analysis for the Title VII and Section 1981 hostile-work-environment claims (Counts I and III) (*infra* Section II.A) and one analysis for the Title VII and Section 1981 retaliation claims (Counts II and III) (*infra* Section II.B). The reader will note that Count III encompasses two claims, one for hostile work environment and one for retaliation; that is because Section 1981 (the basis for Count III) contemplates both kinds of claims. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008) (clarifying that "§ 1981 encompasses claims of retaliation"); *see also Long v. Ford Motor Co.*, 193 F. App'x

that Defendant subjected her to a hostile work environment (Counts I (sexual and racial harassment) and III (racial harassment)) and retaliated against her (Counts II and III) by "allowing Pyramids to unilaterally reduce her wages[,] . . . by refusing to offer her any clerical assignments after she made the complaints of harassment[,] . . . by . . . constructively terminat[ing] her employment[, and] . . . by filing false information with the EEOC accusing Plaintiff of lying." (*Id.* at ¶¶ 54, 64-65).

Defendant subsequently filed the instant Motion, arguing that Plaintiff's claims should be dismissed for multiple reasons: (i) Defendant is not Plaintiff's "employer" as defined by Title VII; (ii) Plaintiff failed to allege facts suggesting that Defendant "knew or should have known of the purported sexual or racial harassment"; and (iii) Plaintiff failed to allege facts suggesting that Defendant had knowledge of any protected activity that forms the basis of Plaintiff's retaliation claims, "including what protected activity Plaintiff was engaged in, what adverse employment action was taken by [Defendant], and how the protected activity is connected to the alleged adverse employment action." (Doc. No. 11 at 1).

LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive

---

497, 501 (6th Cir. 2006) (stating the elements required to prove a prima facie case of hostile work environment under Section 1981).

Notably, because neither the Motion nor the Memorandum directly addressed Plaintiff's Section 1981 claims of hostile work environment and retaliation (Count III), even if the Court found it appropriate to dismiss the Title VII claims of hostile work environment (Count I) and retaliation (Count II)—which it ultimately does not—, it would nonetheless be inappropriate for the Court to dismiss Count III prior to affording Plaintiff an opportunity to respond to the argument set forth in the Reply regarding Count III. However, because the Court is denying the Motion in its entirety, the Court need not afford Plaintiff an opportunity to respond.

a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*.; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bold" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, there is an exception to this Rule: "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Herpst v. Parkridge Med. Ctr., Inc.*, No. E201700419COAR3CV, 2018 WL 4052208, at *3 (Tenn. Ct. App. Aug. 23, 2018); *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 789, 791-92 (M.D. Tenn. 2018). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (cleaned up and quotation omitted). "In other words, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss, but a genuine dispute as to the legal sufficiency of a document requires the court to consider the issue under a motion for summary judgment standard." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).

On a Rule 12(b)(6) motion to dismiss, "[t]he moving party has the burden of proving that no claim exists." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield,* 552 F.3d 430, 433 (6th Cir. 2008). That is not to say that the movant has some *evidentiary* burden; as should be clear from the discussion above, evidence (as opposed to *allegations* as construed in

light of any allowable matters outside the pleadings) is not involved on a Rule 12(b)(6) motion. The movant's burden, rather, is a burden of *explanation*; since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim.

Importantly, the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), *modified* by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), is inapplicable on a Rule 12(b)(6) motion to dismiss.[8] That means that a plaintiff need not allege facts specifically indicating that the plaintiff could carry the burden she might ultimately bear under *McDonnell Douglas*. This is because *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). And that is because, a plaintiff is not required to plead what would qualify as a prima facie case for purposes of *McDonnell Douglas. See, e.g., Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("The district court's requirement that [the plaintiff's] complaint establish a prima facie case under *McDonnell Douglas* and its progeny is contrary to Supreme Court and Sixth Circuit precedent."); *Clough v. State Farm Mut. Auto. Ins. Co.*, No. 13-2885-STA-tmp, 2014 U.S. Dist.

---

[8] The Sixth Circuit has summarized the applicability and workings of the *McDonnell Douglas* framework as follows:

> A plaintiff may show discrimination by direct evidence, or a plaintiff lacking direct evidence of discrimination may succeed on a Title VII claim by presenting indirect evidence under the framework first set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).

> To succeed under the *McDonnell Douglas* framework, the plaintiff must first make out a prima facie case of discrimination by a preponderance of the evidence…. Once the plaintiff makes out a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for" the adverse employment action. Should the defendant do so, the plaintiff then must prove by a preponderance of the evidence that the stated reasons were a pretext for discrimination.

*Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07 (6th Cir. 2019) (citations omitted).

LEXIS 41642, 2014 WL 1330309, at *6 (W.D. Tenn. Mar. 28, 2014) ("In light of *Swierkiewicz*, the Court concludes that strictly speaking Plaintiff need not plead all of the elements of the prima facie case in order to survive a motion to dismiss."). The undersigned explained this in some detail in resolving a motion to dismiss a plaintiff's claims brought under the Tennessee Human Rights Act ("THRA"):[9]

> But since this is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a prima facie case under *McDonnell Douglas. Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012). *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510-11, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). "[T]he precise requirements of a prima facie case can vary depending on the context and before discovery has unearthed the relevant facts and evidence, it may be difficult to define the appropriate formulation. Significantly, the Supreme Court identified the possibility that discovery may produce direct evidence of discrimination, rendering the *McDonnell Douglas* burden-shifting framework inapplicable to a plaintiff's claims." *Keys*, 684 F.3d at 609 (discussing *Swierkiewicz*) (internal citation omitted).
>
> This only stands to reason. After all, the *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (*i.e.*, as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). 411 U.S. at 802. But except perhaps in a very limited sense (as for example when a district court will consider, if uncontradicted in a plaintiff's reply brief, a defendant's factual assertions as to the content in a document referred to in the plaintiff's complaint) a defendant's position regarding the facts simply is not [to] be considered on a Rule 12(b)(6) motion to dismiss. *See Burns v. United States*, 542 F. App'x 461, 466-67 (6th Cir. 2013). Therefore, the *McDonnell Douglas* framework does not apply on this Motion, and Plaintiff is not required here to make out a prima facie case as

---

[9] THRA claims are generally analyzed under Title VII standards. *See Armstrong v. Tennessee Education Lottery Corp.*, 219 F. Supp. 3d 708, 714 at n.1 (M.D. Tenn. 2016). Further, following this Court's opinion in *Jodry v. Fire Door Solutions, LLC.*, this Court applied the analysis from *Jodry* when analyzing a motion to dismiss a plaintiff's Title VII claims. *See Ogbonna-McGruder v. Austin Peay State Univ.*, No. 3:21-cv-00506, 2023 U.S. Dist. LEXIS 87918, at *14-16 (M.D. Tenn. May 19, 2023) (Richardson, J.). Therefore, the Court's discussion in *Jodry* is clearly applicable to Title VII. Further, because courts "review claims of alleged race discrimination brought under § 1981…under the same standards as claims of race discrimination brought under Title VII," *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (citing *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 418 (6th Cir. 1999), the Court's discussion in *Jodry* is applicable to Section 1981 claims as well.

required by *McDonnell Douglas* on a motion for summary judgment; instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss.

*Jodry v. Fire Door Sols., LLC*, No. 3:20-cv-00243, 2020 U.S. Dist. LEXIS 244609, 2020 WL 7769924, at *3-4 (M.D. Tenn. Dec. 30, 2020) (Richardson, J.). So, as noted in *Keys, McDonnell Douglas* ultimately may not apply at all in a particular case; specifically, it would not apply if the plaintiff can rely on direct evidence of discrimination, rather than indirect evidence of discrimination (which is what *McDonnell Douglas* deals with). And even if *McDonnell Douglas* would apply at later stages of the case, it cannot sensibly be applied at the pleading stage, and so its requirement of a showing of an indirect-evidence prima facie case must not be applied at the pleadings stage.

<u>DISCUSSION</u>

As a preliminary matter, the Court must determine whether it can properly consider the exhibits attached to Defendant's Memorandum ("Exhibits"). The undersigned previously has explained the procedure for handling the attachment of evidence to a 12(b)(6) motion:

> Fed. Rule of Civ. P. 12(d) states that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." However, there is an exception to this Rule: "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Doe*, 219 F. Supp. 3d at 652-53; *Blanch*, 333 F. Supp. 3d at 791-92. "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecommunications, Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (cleaned up and quotation omitted). "In other words, if the authenticity, validity, or enforceability of a document is not in dispute, the court may consider it on a motion to dismiss, but a genuine dispute as to the legal sufficiency of a document requires the court to consider the issue under a motion for summary judgment standard." *Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No.

3:17-CV-00643, 2018 U.S. Dist. LEXIS 200504, 2018 WL 6181356, at *2 (M.D. Tenn. Nov. 27, 2018).

*Thompson v. Hendrickson USA, LLC*, No. 3:20-cv-00482, 2021 WL 848694, at *6 (M.D. Tenn. Mar. 5, 2021) (Richardson, J.).

Defendant attached to its Memorandum two exhibits: (1) Defendant's Position Statement (Doc. No. 11-1) and (2) the Notice of Rights (Doc. No. 11-2). There is no dispute that the Exhibits are authentic or that the Exhibits were referred to in Plaintiff's Complaint. (Doc. No. 1 at ¶¶ 7, 40-41; Doc. No. 17 at 8-9). Rather, Plaintiff argues that it is improper for the Court to consider the Exhibits because (according to Plaintiff) they are "not central to any of her claims," (Doc. No 17 at 8), whereas Defendant contends that the Court may consider the Exhibits because (according to Defendant) they are "central to her claims." (Doc. No. 18 at 4).

The Court concludes that the Exhibits are central to Plaintiff's claims. First, Defendant's Position Statement is central to Plaintiff's claims because Plaintiff cites it as a basis for her retaliation claim. (Doc. No. 1 at ¶¶ 39-41, 65). Specifically, Plaintiff asserts that the fact that Defendant filed its Position Statement was an act of retaliation in and of itself, because (according to Plaintiff) Defendant's Position Statement included false information and "accus[ed] Plaintiff of lying." (*Id.*). And the Notice of Rights is likewise central to Plaintiff's claims because Plaintiff's receipt of the Notice of Rights was a condition precedent to her filing the instant action, and Plaintiff discusses her receipt of the Notice of Rights in her Complaint. (Doc. No. 1 at ¶ 7). *See Thompson*, 2021 WL 848694, at *13-14 (holding that the exhibit introduced via a 12(b)(6) motion to dismiss was central to the plaintiff's claims because the filing of such "was a condition

precedent to her filing the instant action, and [the p]laintiff discusse[d] it at length in her Complaint. (Doc. No. 1 at ¶¶ 7, 30).");[10]  42 U.S.C. § 2000e—5(f)(1).

Accordingly, because the Exhibits were referred to in Plaintiff's Complaint and central to her claims therein, the Exhibits can be considered and the Motion need not be converted into one for summary judgment.[11]

The Court next will address the threshold issue of whether Defendant qualifies as an "employer" under Title VII, then address each of Plaintiff's claims in turn.

**I.      Plaintiff Has Alleged Facts Plausibly Suggesting that Defendant Qualifies as an "Employer" under Title VII.[12]**

"To establish [a] claim under Title VII, [Plaintiff] must show that [Defendant] was her 'employer' within the meaning of the Statute." *Nethery v. Quality Care Inv'rs., L.P.*, 814 Fed.

---

[10] In her Complaint, Plaintiff referred to the Notice of Rights once. Specifically, she did so in the jurisdictional section of the Complaint, wherein she acknowledged that receipt of such was a condition precedent to her filing her claims. (Doc. No. 1 at ¶ 7 ("Plaintiff complied with all conditions precedent to the filing of these claims pursuant to 42 U.S.C. § 12101 et seq., to wit: a charge of discrimination was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice; the EEOC issued Plaintiff a Notice of Right to Sue for the charge and this action was commenced within 90 days of receipt of Notice of Right to Sue")). Although the complaint in *Hendrickson* referred to the document in question twice—once in its jurisdictional section and once thereafter—the Court finds that differentiation from the present case of little concern, especially considering the second reference in *Hendrickson* involved that plaintiff merely reiterating what she had previously stated. Complaint ¶¶ 7, 30, *Thompson v. Hendrickson USA, LCC*, No. 3:20-cv-00482, 2021 U.S. Dist. LEXIS 41697 (M.D. Tenn. Mar. 5, 2021) (Doc. No. 1). Therefore, the Court finds that Plaintiff's reference to the Notice of Rights in her Complaint, coupled with her direct acknowledgment that receipt of such was a condition precedent to the filing of her claims, is sufficient to find that the Notice of Rights is central to Plaintiff's claims.

[11] Although the Court *may* consider the Exhibits without converting the Motion into one for summary judgment, the Court found it unnecessary to rely on the Exhibits in reaching its holding.

[12] Importantly, although the Court will conduct only one analysis for each claim—one analysis of the hostile-work-environment claim (*infra* Section II.A) and one analysis of the retaliation claims (*infra* Section II.B)—the analysis of whether Defendant qualifies as an "employer" as defined by Title VII is relevant only to the claims brought pursuant to Title VII. Put another way, whether Defendant qualifies as an "employer" has no effect on whether Plaintiff has a viable hostile work environment and/or the retaliation claim pursuant to Section 1981. This is because, although to "establish [a] claim under Title VII, [Plaintiff] must show that [Defendant] was her 'employer' within the meaning of the Statute," *Nethery, v. Quality*

Appx. 97, 102 (6th Cir. 2020) (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997)). "Under the 'joint-employer' theory, 'an entity that is not the plaintiff's formal employer may be treated under these doctrines as if it were the employer for purposes of employment laws such as Title VII.'" *Id.* at 102-03 (quoting *Sanford v. Main St. Baptist Church Manor, Inc.*, 449 F. App'x 488, 491 (6th Cir. 2011)). Entities will qualify as joint employers if they "share or co-determine those matters governing essential terms and conditions of employment." *E.E.O.C. v. Skanska USA Bldg., Inc.*, 550 F. App'x 253, 256 (6th Cir. 2013). The major factors considered in assessing whether entities qualify as joint employers include the "entity's ability to hire, fire or discipline employees, affect their compensation and benefits, and direct and supervise their performance." *Id.*; *see also Nethery*, 814 Fed. Appx. at 103. The ultimate determination is "made holistically by looking at the totality of the factors in the aggregate, rather than requiring satisfaction of all the factors." *Edmondson v. Nissan N. Am., Inc.*, No. 3:22-cv-00513, 2024 U.S. Dist. LEXIS 197183, at *30 (M.D. Tenn. Oct. 30, 2024) (citing *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir. 2009)).

In the present case, Defendant argues that the Motion should be granted because "Plaintiff fail[ed] to allege facts establishing [Defendant] as the Direct Employer or Joint Employer" per Title VII. (Doc. No. 11 at p. 7). The Court disagrees, finding instead that Plaintiff has alleged facts plausibly suggesting that Defendant qualifies as—at a minimum—a joint employer.[13] As emphasized above, all three factors assessed in a joint-employer determination need not weigh in favor of classifying Defendant as a joint employer in order for Defendant ultimately to be so

---

*Care Inv'rs., L.P.*, 814 F. App'x 97, 102 (6th Cir. 2020) (citing *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 (6th Cir. 1997)), the same is not required to establish a claim under Section 1981.

[13] Ultimately, because the Complaint plausibly suggests that Defendant would qualify as an employer under the joint-employer theory, there is no need for the Court to engage in determining whether Defendant would qualify as Plaintiff's "formal" (or primary) employer.

classified; instead the ultimate determination is made holistically by looking at the totality of the factors in the aggregate. Although Plaintiff has not alleged facts plausibly suggesting that Defendant possessed the ability to direct and supervise Plaintiff's performance (i.e., factor three), Plaintiff has alleged facts plausibly suggesting satisfaction of the other two factors (i.e. factors one and two) sufficient to plausibly suggest—on balance—that Defendant was a joint employer of Plaintiff.

First, Plaintiff has alleged facts plausibly suggesting that Defendant retained the ability to hire, fire, or discipline Plaintiff (i.e., factor one). Plaintiff alleged that Defendant "recruits and hires employees on behalf of its clients who are looking to fill open positions," that Plaintiff was hired by Defendant, and that Defendant ultimately "instructed Plaintiff to not return to Pyramids and assured her they would find her another position." (Doc. No. 1 at ¶¶ 11-14 and 33). Taking these factual allegations as true, and drawing reasonable inferences in Plaintiff's favor as required on a 12(b)(6) motion to dismiss, the Court reasonably can (and does) infer that Defendant had the ability to hire, fire, and/or discipline Plaintiff.

Additionally, Plaintiff has alleged facts plausibly suggesting that Defendant retained the ability to affect Plaintiff's compensation and benefits (i.e., factor two). Plaintiff alleged that Defendant "paid Plaintiff directly" (Doc. No. 1 at ¶ 16), "pays wages and benefits directly to the personnel that it staffs with clients" (*id.* at ¶ 11), and agreed to Mr. Mikhail's decision to reduce Plaintiff's wages (*id.* at ¶ 24 ("After [Plaintiff] denied Mr. Mikhail's sexual advancements [sic], Mr. Mikhail reduced her wages to $25 per hor. [Defendant] agreed to this reduction.")). This all plausibly suggests that Defendant retained the ability to affect Plaintiff's compensation and benefits.

For all of the above reasons, Plaintiff has alleged factual matter plausibly suggesting that Defendant was a joint employer of Plaintiff.[14]  The Court's analysis will proceed accordingly.

## II.    Plaintiff's Title VII and Section 1981 Claims

Defendant seeks dismissal of Plaintiff's claims of hostile work environment and retaliation. Plaintiff brings each kind of claim pursuant to both Title VII and Section 1981. Title VII prohibits employers from discharging or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits employers from discriminating against individuals in retaliation for opposing such discrimination. *Id.* § 2000e-3(a).[15] Section 1981 prohibits "intentional race discrimination in the making and enforcing of contracts involving both public and private actors." *Amini v. Oberlin Coll.*, 440 F.3d

---

[14] It goes almost without saying that this suggestion could be put to the test at later stages of litigation. Discovery can, and likely will, shed light on the extent to which, under the applicable factors, the evidence shows (or fails to show) that Defendant actually qualifies as a "joint employer."

[15] As suggested here by the Court's paraphrasing of 42 U.S.C. § 2000e-3(a), that statute refers to retaliation as a form of discrimination. This is typical of civil rights statutes. *See, e.g., Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (stating in the context of Title IX that "[r]etaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination"). That is not to say that retaliation is always treated just like non-retaliation forms of discrimination; sometimes it is treated differently from general discrimination, and when that happens it is usually treated differently in a way that favors the plaintiff. *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019) ("Although we had previously held that the same requirements [as to what amounts to an actionable adverse employment action] apply to Title VII retaliation claims and Title VII discrimination claims, the Supreme Court made clear in *Burlington Northern* that [such] requirements for a retaliation claim are in fact considerably less stringent." (*citing Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59-69 (2006) (rejecting the Sixth Circuit's contrary view))). But for present purposes, it is enough to note that the Court hereinafter generally uses the term "retaliation" to refer solely to discrimination in the form of (naturally) retaliation, while reserving the term discrimination for the non-retaliation form of discrimination—i.e., discrimination based on class or classification, which the Court at times herein refers to as "general" discrimination.

350, 358 (6th Cir. 2006). Following the 1991 amendment to Section 1981,[16] the Supreme Court clarified that "§ 1981 encompasses claims of retaliation." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). Because courts use the same framework for analyzing the same kind of claim (discrimination or retaliation) no matter the statute (Title VII or Section 1981) under which the claim is brought, the Court need conduct only one analysis for each kind of claim.[17] *Rogers v.*

---

[16] Via the Civil Rights Act of 1991, Congress amended Section 1981 to add 42 U.S.C. § 1981(b), which defines more precisely the scope of Section 1981. Prior to the Civil Rights Act of 1991, the Supreme Court had issued an opinion narrowing the scope of Section 1981 by excluding from its scope conduct occurring after formation of the employment contract, which is the temporal context in which retaliation likely would occur (if it were to occur at all). *See Patterson v. McLean Credit Union*, 491 U.S. 164, 177 (1989). In *Patterson*'s aftermath, via the Civil Rights Act of 1991, Congress "enacted legislation [codified at 42 U.S.C. § 1981(b)] that superseded *Patterson* and explicitly defined the scope of § 1981 to include post-contract-formation conduct." *Humphries*, 553 U.S. at 451. Such amendment established and clarified that Section 1981 encompasses claims of retaliation. *Id.* at 457.

[17] It is worth clarifying that it is not redundant (or duplicative) to pursue claims of hostile work environment and retaliation under Title VII and Section 1981, while simultaneously clarifying why it is permissible to conduct a single analysis of the same kind of claim (discrimination or retaliation) brought under both statutes. Importantly, the Supreme Court has clarified that "the 'remedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent.'" *Humphries*, 553 U.S. at 455 (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975)). This is because Title VII and Section 1981 have different procedural requirements and different available remedies. *See Id.* ("Title VII provides important administrative remedies and other benefits that § 1981 lacks.").

Regarding procedural requirements, for example, "[i]n order for federal courts to have subject matter jurisdiction of Title VII claims, the claimant must first unsuccessfully pursue administrative relief." *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991) (citing *Love v. Pullman Co.*, 404 U.S. 522 (1972)). Further, to "establish [a] claim under Title VII, [Plaintiff] must show that [Defendant] was her 'employer' within the meaning of the Statute." *Nethery*, 814 F. App'x at 102 (citing *Swallows*, 128 F.3d at 992). The same is not true for Section 1981. Therefore, a plaintiff conceivably could be barred from pursuing relief under Title VII for failure to meet the aforementioned procedural requirements, while simultaneously being able to successfully pursue the same claims under Section 1981.

Regarding remedies, the Supreme Court, in *Johnson v. Railway Express Agency, Inc.*, explained the differences between those available under Title VII and those available under Section 1981:

> In the claimant's [Title VII] suit, the federal district court is empowered to appoint counsel for him, to authorize the commencement of the action without the payment of fees, costs, or security, and even to allow an attorney's fee. 42 U.S.C. s 2000e—5(f)(1) (1970 ed., Supp. III) and 42 U.S.C. s 2000e—5(k). Where intentional engagement in unlawful discrimination is proved, the court may award backpay and order "such affirmative action as may be appropriate." 42 U.S.C. s 2000e—5(g) (1970 ed., Supp. III). The backpay, however, may not be for more than the two-year period prior to the filing of the charge

*Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018); *Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 862 (M.D. Tenn. 2021) (Richardson, J.); *Pendleton v. Bob Frensley Chrysler Jeep Dodge Ram, Inc.*, No. 3:14 C 02325, 2016 U.S. Dist. LEXIS 66219, 2016 WL 2927983, at *3, 8, 10 (M.D. Tenn. May 19, 2016).

    A.    <u>Claims of Hostile Work Environment (Counts I and III)</u>.

To ultimately prevail on a hostile-work-environment claim, a plaintiff must show that:

(1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on [her protected status], (4) the harassment was sufficiently severe or pervasive to alter the conditions of

---

with the Commission. Ibid. Some District Courts have ruled that neither compensatory nor punitive damages may be awarded in the Title VII suit.

. . . .

. . . . An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages. See, *e.g., Caperci* v. *Huntoon,* 397 F. 2d 799 (CA1), cert. denied, 393 U.S. 940 (1968); *Mansell* v. *Saunders,* 372 F. 2d 573 (CA5 1967). And a backpay award under § 1981 is not restricted to the two years specified for backpay recovery under Title VII.

. . . .

. . . . Also[,] Title VII offers assistance in investigation, conciliation, counsel, waiver of court costs, and attorneys' fees, items that are unavailable at least under the specific terms of § 1981.

421 U.S. at 458-460.

    Although Title VII and Section 1981 are "separate, distinct, and independent," there is undoubtedly "overlap" between the two. *Humphries*, 53 U.S. at 455. In light of this overlap, courts—including the Sixth Circuit and this Court—have concluded that it is proper to use the same framework for analyzing a kind of claim (discrimination or retaliation) brought under both Title VII and Section 1981; that is, courts need undertake only one analysis per kind of claim. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771 (6th Cir. 2018) ("We review claims of alleged race discrimination brought under § 1981 . . . under the same standards as claims of race discrimination brought under Title VII" (quoting *Quanex Corp.*, 191 F.3d at 658)); *see also Jordan v. Mathews Nissan, Inc.*, 539 F. Supp. 3d 848, 862 (M.D. Tenn. 2021) ("Plaintiffs bring each of [his] claims pursuant to Title VII . . . [and] 42 U.S.C. § 1981 . . . . Courts use the same framework for analyzing all . . . of Plaintiffs' claims under the . . . statutes, so the Court need only conduct one analysis of each claim.") (Richardson, J.).

    But even though the Court need conduct only one analysis per kind of claim, a plaintiff is justified in pursuing relief on the same kind of claim under both Title VII and Section 1981. This is because, as indicated above, it is possible for a claimant to be successful in establishing the claim under one statute but not the other and to obtain a particular kind of relief under one statute but not the other.

employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

*Waldo v. Consumers Energy Co.*, 726 F.3d 802, 813-14 (6th Cir. 2013) (quoting *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011)).[18]

The Court is constrained to take some time to make an important point: the better view is that these are the elements of a claim of hostile work environment, and not merely the elements of an indirect-evidence prima facie case (under *McDonnell Douglas*) of hostile work environment. This is because the better view is that hostile-work-environment claims simply are not subject to the *McDonnell Douglas* framework.

Concededly, many cases in the Sixth Circuit do apply *McDonnell Douglas* to such claims and treat the elements of such a claim as elements of a mere indirect-evidence prima facie case. *E.g.*, *Kubik v. Cent. Mich. Univ. Bd. Of. Trs.*, 717 F. App'x 577, 584 (6th Cir. 2017) (quoting *Ladd v. Grand Trunk W. R.R.*, 552 F.3d 495, 500 (6th Cir. 2009)).

But the Sixth Circuit has expressly held that *McDonnell Douglas* does *not* apply to claims of hostile work environment. *Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000) ("The *McDonnell Douglas* framework is meant to prove that conduct which might have some otherwise legitimate motive (such as promoting a man instead of a woman) was in fact based upon discriminatory motive. When a plaintiff proves that a hostile work environment existed, there is no legitimate justification for such an environment, and thus recourse to the *McDonnell Douglas* test is not warranted."), *rev'd on other grounds*, 532 U.S. 843 (2001). This holding appears never

---

[18] The elements required to prove hostile work environment under Title VII and Section 1981 are the same. *See Waldo*, 726 F.3d at 813 (enumerating the elements required to prove a prima facie case of hostile work environment under Title VII); *see also Long*, 193 F. App'x at 501(enumerating the elements required to prove a prima facie case of hostile work environment under Section 1981); *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999) ("The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises." (quotation omitted)).

to have been overruled and is still cited by courts around the country. Because *Pollard* was reversed (on other grounds), the Court does not treat it as precedential. However, its holding was unimpeached by that reversal and is very persuasive—which is why *Pollard* still gets cited for this holding and why several circuits (and district courts) have taken the same approach. *See e.g., Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 n. 11 (3d Cir. 2017) ("We agree that the burden-shifting framework is inapplicable here because, as the *Pollard* court explained, there can be no legitimate justification for a hostile work environment. Therefore, we will not apply the *McDonnell Douglas* burden-shifting framework to [plaintiff's] hostile work environment claim." (citation omitted)); *Piety Foley v. Drexel Univ.*, No. CV 22-1777, 2024 WL 3540445, at *3 n.5 (E.D. Pa. July 25, 2024); *Lewis v. Bd. of Supervisors of Louisiana State Univ.*, No. CV 21-198-SM-RLB, 2023 WL 8370096, at *8 n. 102 (M.D. La. Dec. 1, 2023).[19]

---

[19] The Fourth Circuit cogently described the sound rationale for this rule as follows:

> The district court erred when it applied the burden-shifting framework to [the plaintiff's] hostile work environment claim. The purpose of the burden-shifting framework is to assist the court in determining whether a plaintiff without direct evidence of unlawful intent can nevertheless raise a triable issue over whether a facially legitimate action was the product of discriminatory motivation. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). Here, [the plaintiff] has presented direct evidence of sexual harassment, and within the context of her hostile work environment claim there is no facially legitimate action to consider. *See Johnson v. Booker T. Washington Broad. Serv. Inc.*, 234 F.3d 501, 510–11 (11th Cir. 2000) (holding that district court erred by applying burden-shifting framework to sexual harassment case).
>
> The district court therefore applied an improper standard to [the plaintiff's] hostile work environment claim.

*Stewart v. MTR Gaming Grp., Inc.*, 581 F. App'x 245, 248 (4th Cir. 2014).

*Stewart* hints at something else that is wrong with reflexively (and incorrectly) applying *McDonnell Douglas* to claims of hostile work environment. *McDonnell Douglas* is supposed to *aid* plaintiffs by giving them an *alternative* way to prevail—i.e., by giving them a way to survive a summary-judgment motion even when they lack direct evidence. It is *not* supposed to force a plaintiff to prevail (if at all) under an indirect-evidence theory. *Stewart* seems to point to the risk that courts might incorrectly take the view that a plaintiff *does* have to prevail (if at all) only under an indirect-evidence theory. How might courts do this? By overlooking the fact that: (a) a plaintiff always has the option of preceding via direct evidence (if any

It may also be why the Sixth Circuit in some cases has made no mention at all of *McDonnell Douglas* when analyzing claims of hostile work environment and has treated the (five) stated elements as elements of the claim as whole—the finding of which by the jury would enable the jury to find in favor of the plaintiff on the claim—and not merely elements of an indirect-evidence prima facie case of hostile work environment. *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 411 (6th Cir. 2021); *Waldo v. Consumers Energy Co.*, 726 F.3d at 819; *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (2011).[20] That is, the Court will treat the five elements as elements of a claim rather than of just an indirect-evidence prima facie case.[21] Therefore, unlike if these were merely elements of an indirect-evidence prima facie case under *McDonnell Douglas*, it is appropriate for the Court to assess whether Plaintiff has set forth factual matter plausibly suggesting the existence of these elements.

At times the Sixth Circuit has employed not the above-referenced five elements, but rather a set of three elements that appear to amount substantively to the same thing (albeit via a different articulation). For example, in *Smith v. Rock-Tenn Servs.*, 813 F.3d 298, 307-312 (6th Cir. 2016), the Sixth Circuit divided its hostile-work-environment analysis into three sections: (1) whether there was "[h]arassment [b]ased on [the plaintiff's protected status]," (2) "[w]hether the

---

exists); and (b) explicitly race-based or sex-based comments can (at least if severe or pervasive) constitute direct evidence of unlawful race-based or sex-based harassment.

[20] The Court is aware that the earlier cases (*Waldo* and *Williams*) describe the fifth element somewhat differently than does *Wyatt*. The Court follows *Wyatt* and other later cases, which were informed by Supreme Court case law post-dating *Waldo* and *Williams*.

[21] One caveat, though: although cases taking this approach typically refer to the fifth element (employer liability) as indeed just that—an element, i.e., something that the plaintiff must prove—in some cases (those involving *supervisor* harassment) the burden actually is on the employer to disprove it (i.e., show, as an affirmative defense, that employer liability is not warranted under the applicable standard). *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). But that scenario is not implicated herein.

[h]arassment [c]reated a [h]ostile [w]ork [e]nvironment," and (3) "Defendant's [r]esponse" (i.e., employer liability). This Court elects to adopt a similar approach.

As applied to Plaintiff's claim, these elements require Plaintiff to show that (1) she was subject to unwelcome harassment based on her particular protected status, (2) the harassment created a hostile work environment, and (3) Defendant is liable. Importantly, although Plaintiff will eventually be required to prove all of the elements required to prevail under a hostile work environment theory, at the present (motion-to-dismiss) stage, Plaintiff need only satisfy the plausibility standard governing a motion to dismiss, i.e., show that it is plausible that these elements all exist. *See Austin v. Alexander*, 439 F. Supp. 3d 1019, 1024 (M.D. Tenn. 2020).

In its Memorandum, Defendant appears to focus solely on the third element (i.e., employer liability), arguing that Plaintiff failed to make "any allegations that [Defendant] had knowledge of the facts or circumstances giving rise to the hostile work environment until after Plaintiff reported it to [Defendant]." (Doc. No. 11 at ¶ 13). Importantly, aside from conclusively stating that Plaintiff's allegations are "insufficient to establish the elements necessary for a prima facie case of sexual harassment/hostile work environment," Defendant fails to directly address or challenge the sufficiency of Plaintiff's allegations with respect to the first two elements. (*Id.* at ¶ 16). Therefore, the Court finds it appropriate to consider the first two elements undisputedly met for purposes of the Motion. However, even if Defendant had provided an actual argument justifying review of the first two elements, the Court nonetheless finds alternatively that Plaintiff has alleged factual matter plausibly suggesting the existence of these elements, and the Court also finds that Plaintiff has alleged factual matter plausibly suggesting the existence of the third element as well.

Regarding the first of the three elements of a hostile-work-environment claim, the Court finds that Plaintiff plausibly pled facts illustrating such harassment. Plaintiff alleged that she is a

member of a protected class based on both her sex and race, stating that she is "a mixed race, African American and Latina, Female." (Doc. No. 1 at ¶¶ 8 and 44). Plaintiff went on to outline the sexual and racial harassment she suffered, including but not limited to Mr. Mikhail requiring Plaintiff to hug him, pushing his erect penis against Plaintiff, making sexual remarks about Plaintiff's body composition, and using a derogatory racial slur when speaking and referring to Plaintiff. (Doc. No. 1 at ¶¶ 18-23 and 45-47). Further, the Court is able to draw reasonable inferences based on the factual matter alleged in Plaintiff's Complaint that the harassment was based on Plaintiff being a part of one or more protected classes[22] (*i.e.*, a female person falling within a particular racial class) because the harassment outlined was sexually and racially charged language and conduct.

After establishing harassment based on one's protected status, "[a] plaintiff seeking to proceed on a hostile work environment theory must next prove [as the second element] that the environment at the workplace was hostile." *Smith v. Rock-Tenn Servs.*, 813 F.3d 298, 309 (6th Cir. 2016). A workplace is deemed hostile when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (internal citations omitted). "To succeed, a plaintiff must show that the work environment was both subjectively and objectively hostile; in other words, that the plaintiff not

---

[22] To clarify, Plaintiff is a member of two separate protected classes by virtue of her being female and African American/Latina, either of which satisfies the first element of Plaintiff's Title VII hostile-work-environment claim—that Plaintiff was subjected to harassment based on her protected status. However, because Section 1981 is specifically aimed at prohibiting only "race discrimination," *cf Amini.*, 440 at 358, the first element of Plaintiff's Section 1981 hostile-work-environment claim is satisfied by virtue of her being subjected to harassment based on her *race. Cf Bloomer v. Word Network Operating Co.*, 785 F. Supp. 3d 251, 269 (E.D. Mich. 2025) ("Section 1981 imposes a duty on employers to provide employees with a work environment free from harassment based on the employee's race."); 42 U.S.C. § 1981(a).

only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well." *Smith*, 813 F.3d at 309. "In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment . . ., it is well-established that the court must consider the totality of circumstances."[23] *Williams v. GMC*, 187 F.3d 553, 562 (6th Cir. 1999). So doing involves analyzing "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006) (quoting *Harris*, 510 U.S. at 23).

Defendant does nothing to specifically dispute that the work environment at Pyramids would qualify as a hostile work environment. And the Court finds that Plaintiff plausibly pled facts showing that the work environment was both subjectively and objectively offensive.

In the present case, there is little doubt Plaintiff subjectively viewed the work environment as being hostile. Not only did Plaintiff report Mr. Mikhail's inappropriate behavior to her manager, but Plaintiff specifically alleged in her Complaint that when she reported Mr. Mikhail's inappropriate behavior she indicated "how uncomfortable Mr. Mikhail made her feel and how upset she was at the outrageous treatment." (Doc. No. 1 at ¶ 28). Therefore, the inquiry turns on whether Plaintiff plausibly pled that the work environment was *objectively* hostile. Ultimately, drawing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff plausibly

---

[23] Although a totality of the circumstances review is to be employed, it is important to emphasize that element one—that the harassment was based on the plaintiff's protected status—somewhat limits the scope of what courts consider when conducting a review of the second element because only the harassment based on one's protected class is to be analyzed. *See CSX Transp. Co.*, 643 F.3d at 511 (holding that because the plaintiff's Title VII claim for hostile work environment alleged harassment based solely on race, "only harassment based on the plaintiff's race may be considered" when analyzing whether a hostile work environment existed). So, in the present case, the sexual and race-based harassment Plaintiff suffered is all that the Court will consider in assessing whether Plaintiff has asserted facts plausibly suggesting that a hostile work environment existed.

alleged facts plausibly suggesting a hostile work environment. The actions and comments alleged cannot be classified as a "mere offensive utterance" in light of the frequency and severity of the conduct. Instead, a reasonable person could conclude that Mr. Mikhail's comments and actions—including Mr. Mikhail's sexual remarks about his sex drive to Plaintiff, his sexual remarks about Plaintiff's body, his use of racial slurs when referring to Plaintiff, his requirement that Plaintiff hug him every morning, his erect penis rubbing on Plaintiff, etc.—were "sufficiently severe or pervasive to alter the conditions of [Plaintiff]'s employment and create an abusive working environment." *Harris*, 510 U.S. at 21.

The last element of a hostile-work-environment claim is employer liability. Defendant appears to argue that Plaintiff's allegations fail to establish that Defendant "had knowledge of the facts or circumstances giving rise to the hostile work environment," warranting dismissal of Plaintiff's hostile-work-environment claims for failure on the final element. (Doc. No. 11 at ¶ 13). As discussed below, the Court disagrees, finding that—in the present case—employer knowledge is not required to find employer liability.

In hostile work environment cases, the analysis of the employer's liability depends on the status of the alleged harasser. *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The Sixth Circuit has clarified that "[w]hen the plaintiff's harasser is a co-worker, we apply a heightened negligence standard," but "if the harasser is a supervisor, we apply a more stringent standard"—that is, a standard that is more stringent on defendant-employers (and correspondingly more lenient on plaintiff-employees). *Wyatt*, 999 F.3d at 412 (citing *Vance*, 570 U.S. at 424). If the harasser is a co-worker, an employer is liable for the conduct of the harasser if the employer "knew or should have known" of the charged sexual and/or racial harassment and "failed to implement prompt and

appropriate corrective action." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009) (internal citations omitted); *see also Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999).

On the other hand, if the harasser qualifies as a "supervisor" and the harassment "culminates in a tangible employment action, the employer is strictly liable." *Vance*, 570 U.S. at 424. Meaning, "employers are vicariously liable for harassment by supervisors, and the employee need *not* show that the employer had knowledge of the harassment." *Barrett*, 556 F.3d at 516 (emphasis added). But if the harassment does not result in a tangible employment action, "the employer may escape liability by establishing" an affirmative defense under the *Faragher-Ellerth* framework. *Wyatt*, 999 at 412 (6th Cir. 2021) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). "For Title VII liability purposes, the Supreme Court defines a 'supervisor' as an employee that has the power 'to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits'" *Wyatt*, 999 F.3d at 412-413 (quoting *Vance*, 570 U.S. at 431 (quoting *Ellerth*, 524 U.S. at 761)).

In the present case, Defendant's Memorandum sets forth the standard for establishing employer liability if Mr. Mikhail (*i.e.*, the harasser) were to qualify as a co-worker (Doc. No. 11 at ¶14), but immediately thereafter asserts that it can establish the necessary affirmative defense to *supervisor harassment* (*Id.* at ¶ 15). These two assertions are inconsistent in that the former implies that Defendant views Mr. Mikhail as a co-worker of Plaintiff, while the latter implies that Defendant views Mr. Mikhail as a supervisor of Plaintiff. Importantly, Defendant has the burden of explanation—meaning that Defendant has the obligation of explaining whether Mr. Mikhail is properly classified as a co-worker or a supervisor for purposes of its Motion—a burden that

Defendant failed to meet. Ultimately, regardless of Mr. Mikhail's classification, the Court finds that Plaintiff plausibly alleged facts sufficient to establish employer liability under either the supervisor or co-worker standard—facts sufficient to establish (i) that Defendant is subject to the more lenient (for plaintiffs) "supervisor" standard for employer liability, and that the "supervisor" standard is met in this case; and (ii) that even if Defendant is subject to the less lenient (for plaintiffs) "co-worker" standard for employer liability, that standard also is met in this case. The Court will analyze the application of the two standards in turn.

As discussed above, the Sixth Circuit has defined a "supervisor" as "an employee that has the power to take tangible employment actions against the victim, *i.e.* to effect a significant change in employment status," including failing to promote and causing a significant change in benefits. *Wyatt*, 999 F.3d at 412-413 (internal citations omitted). Not only is Mr. Mikhail the CEO of Pyramids (Doc. No. 1 at ¶ 18), but Mr. Mikhail also had the direct power to reduce wages of the employees and actually used such power to reduce Plaintiff's wages—something that undoubtedly qualifies as an act that significantly changes employee benefits (*Id.* at ¶¶ 24 and 27). Therefore, the Court can reasonably infer from the factual allegations in the Complaint that Mr. Mikhail qualifies as a supervisor.[24]

Classifying the harasser as a supervisor results in the employer being held strictly liable if the harasser took some tangible employment action against the victim. *See Vance*, 570 U.S. at 424. Mr. Mikhail did take tangible employment action against the victim (*i.e.*, Plaintiff) by virtue of

---

[24] The Court recognizes that Mr. Mikhail is not technically an employee of Defendant but rather is a client of Defendant. This reality conceivably could have supported an argument that Mr. Mikhail's cannot be treated as either a supervisor or co-worker of Defendant for purposes of the test for employer liability for Defendant. However, Defendant has the burden of explanation as to why and how Mr. Mikhail should be classified. And Defendant did not outline whether and why Mr. Mikhail should be classified as a supervisor of Plaintiff, a co-worker of Plaintiff, or neither, and certainly did not invoke the fact that Defendant is a client rather than an employee of Defendant.

reducing Plaintiff's wages from $50 per hour to $25 per hour after Plaintiff refused Mr. Mikhail's

sexual advancements (Doc. No. 1 at ¶ 24) and thereafter threatening to again reduce Plaintiff's

wages to $17 per hour when she continued to object to Mr. Mikhail's behavior (*Id.* at ¶ 27). In

sum, because the Court can reasonably infer that Mr. Mikhail would qualify as a supervisor who

took tangible employment action against Plaintiff, Plaintiff has plausibly alleged that Defendant is

strictly liable on the claim of hostile work environment.[25]

      Even if Defendant had attempted to convince the Court to classify Mr. Mikhail as a co-

worker in its Motion, and even if the attempt was successful, the end result would be the same. An

employer is liable for the conduct of a co-worker harasser if the employer "knew or should have

known" of the charged sexual and/or racial harassment and "failed to implement prompt and

appropriate corrective action." *Barrett*, 556 F.3d at 516 (internal citations omitted). At a minimum,

---

[25] Defendant asserts in its Memorandum that "it can successfully establish the necessary affirmative defense to supervisor harassment under the *Faragher-Ellerth* framework." (Doc. No. 11 at ¶ 15). The *Faragher-Ellerth* framework "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Hafford*, 183 F.3d at 513 (internal citations omitted). However, such affirmative defense is available only if the supervisor's harassment does *not* culminate in tangible employment action. *See Wyatt*, 999 at 412 (citing *Faragher*, 524 U.S. at 807; *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). Because Plaintiff plausibly alleged that Mr. Mikhail's harassment did result in tangible employment action, (Doc. No. 1 at ¶¶ 24, 27), the affirmative defense appears unavailable as the Court has to accept such factual allegations as true—at the present stage.

However, even if such affirmative defense may eventually be viable, "[c]ourts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012) (footnote omitted) (citations omitted), *overruled in part on other grounds, Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). But the Sixth Circuit has gone on to clarify that "if the plaintiff['s] complaint contains facts which satisfy the elements of the defendant's affirmative defense, the district court may apply the affirmative defense" at the motion-to-dismiss phase. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

Nonetheless, in the present case, Defendant fails to point to specific facts in the Complaint that would satisfy the elements of Defendant's affirmative defense. Rather, Defendant merely recites the elements of the affirmative defense, then asserts in conclusory fashion that it can satisfy the requirements. (Doc. No. 11 at ¶ 15). Therefore, Defendant cannot rely on its affirmative defense to supervisor harassment under the *Faragher-Ellerth* framework at the present (motion-to-dismiss) phase.

the Court can reasonably infer that Defendant should have known of the hostile work environment based on Plaintiff's allegations that Defendant received similar complaints from other females about Mr. Mikhail and that Defendant knew Mr. Mikhail was taking action against Plaintiff that was similar in kind to action he took against the other females who complained. (Doc. No. 1 at ¶¶ 24-25, 29, 31).

For example, Plaintiff alleged in her Complaint that "[a]t the time she made the report, Ms. Aparico, informed [Plaintiff] that other females had made complaints of Mr. Mikhail while staffed at Pyramids and that [Defendant] failed to take action," (*Id.* at ¶ 29), and that when Plaintiff informed Ms. Aparico that "Mr. Mikhail had retaliated against her when she rebuffed his sexual advances by cutting her pay," that Ms. Aparico responded saying "[t]hat's what he did to the other girl." (*Id.* at ¶ 31). Further, Defendant was aware that Mr. Mikhail cut Plaintiff's pay in half—an action that Defendant knew Mr. Mikhail had previously taken against former female workers who complained of Mr. Mikhail's inappropriate behavior. (*Id.* at ¶¶ 24-25, 31). This all tends to show that even if Defendant did not have actual knowledge of the hostile work environment prior to Plaintiff's report, Defendant nonetheless should have known of the hostile work environment but failed to implement any corrective action.

Therefore, regardless of Mr. Mikhail's ultimate classification (*i.e.*, as a supervisor or as a coworker),[26] the Court finds that Plaintiff has plausibly alleged facts sufficient to plausibly suggest employer liability under either the supervisor or co-worker standard.

In sum, at the present stage—which requires taking all the allegations in the complaint as true—the Court finds that Plaintiff has alleged factual matter that plausibly suggests both that

---

[26] It is possible Mr. Mikhail is properly classified as neither a supervisor nor a coworker; however, Defendant failed to assert this possibility, and the Court declines to consider it *sua sponte*.

Plaintiff was subjected to an actionable hostile-work-environment and that Defendant is liable for it. So the Court will deny the Motion with respect to Plaintiff's claims of hostile work environment.

B.    Claims of Retaliation (Counts II and III)

To establish an indirect-evidence prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must demonstrate that: "(1) she engaged in protected activity; (2) her exercise of that activity was known by the Defendant; (3) the Defendant thereafter [i.e., after learning of her exercise of that activity] took an action that was materially adverse to her; [27] and (4) there was a causal connection between the protected activity and the materially adverse action." *Boxill v. O'Grady*, 935 F.3d 510, 520 (6th Cir. 2019) (citing *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014)).[28] However, as this Court has previously explained, because "this is a Motion to Dismiss, and not a motion for summary judgment, Plaintiff is not required to carry a burden of presenting evidence establishing a prima facie case under *McDonnell Douglas*," "instead Plaintiff must satisfy the plausibility requirement for a motion to dismiss." *Jodry*, 2020 WL 7769924, at *3-4 (citing *Keys*, 684 F.3d at 609) (Richardson, J.). Importantly, "[a]lthough a plaintiff is not required to plead all of the elements of a *McDonnell Douglas* prima facie case, courts have held that a plaintiff who does so can satisfy the plausibility requirement by pleading facts sufficient to support the elements of a prima facie case." *Vandine v. Trinity Health Sys.*, No. 2:14-CV-1242, 2015 WL 5216715, at *4 (S.D. Ohio Sep. 8, 2015) (collecting cases).

---

[27] Importantly, the materially adverse action need not be employment related to sustain a claim of retaliation. *See Davis v. Metro Parks & Recreation Dep't*, 854 F. App'x 707, 717 (6th Cir. 2021) (holding "a charge under [Title VII's anti-retaliation provision] extends beyond workplace-related or employment related retaliatory acts and harm." (internal citations omitted)).

[28] The Sixth Circuit has clarified that "[t]he elements of a retaliation claim under § 1981 are the same as those under Title VII." *Boxill*, 935 F.3d at 520.

Defendant appears to contend that Plaintiff has failed to allege facts that make her retaliation claims plausible, alleging in its Memorandum that "[i]t is unclear, based on the Complaint, what protected activity Plaintiff alleges she engaged in, what she alleges was the corresponding adverse employment action by [Defendant], and how the protected activity is connected to the alleged adverse employment action." (Doc. No 11 at ¶ 18). Although the Court sympathizes with Defendant's struggles in comprehending Plaintiff's Complaint, the Court nonetheless concludes that Plaintiff has alleged facts plausibly suggesting not only a viable claim of retaliation generally, but also the satisfaction of each element of an indirect-evidence prima facie case of retaliation.

As to the first element, it is well established that "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices" is protected conduct. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000); *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009). Here, Plaintiff did just that. (Doc. No. 1 at ¶¶ 28, 52). Plaintiff reported the harassment to management on September 5, 2023, via phone call conversation with her recruiter, Ms. Aparico. (*Id.*). Therefore, the report of harassment to management (the "Protected Activity") would undoubtedly qualify as protected conduct.

To properly analyze the remaining three elements of an indirect-evidence prima facie case of retaliation, the Court must first identify actions or inactions on the part of Defendant that Plaintiff claims amount to an act of retaliation (i.e., a materially adverse action). In the present case, Plaintiff alleges that Defendant engaged in three different kinds of materially adverse actions: (1) allowing Pyramids to unilaterally reduce her pay (Doc. No. 1 at ¶ 54), (2) filing allegedly false information with the EEOC through the filing of its position statement (*id.* at ¶ 65), and (3) constructively terminating her employment by directing Plaintiff not to return to work and

thereafter refusing to assign Plaintiff to another position[29](*id.* at ¶¶ 54, 64). (The Court refers to these respectively as "Act 1," "Act 2," and "Act 3").

As to each of these three Acts, the Court will analyze whether Plaintiff alleged facts plausibly suggesting the existence of the remaining three elements of an indirect-evidence prima facie case of retaliation: that her exercise of the Protected Activity was known by Defendant (element two); Defendant thereafter took an action that was materially adverse to her (element three); and there was a causal connection between the Protected Activity and the materially adverse action (element four).

A retaliation claim cannot be based on Act 1. Any action that occurred prior to the occurrence of the Protected Activity (i.e., before September 5, 2023) necessarily cannot support a claim of retaliation because element two imposes the requirement that Defendant has knowledge of the Protected Activity *when the material adverse action was taken* (meaning, had learned of the Protected Activity prior to taking the materially adverse action). *See e.g., Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 569 (6th Cir. 2019) (stating that, although the defendant eventually possessed knowledge of the protected activity, because the defendant "did not become aware [of the protected activity] until after she was fired[,] . . . . [Defendant] is correct that [Plaintiff] failed to carry her burden at trial as to knowledge[.]").The Complaint itself makes clear that it was not until *after* Plaintiff's reduction in pay (Act 1) that Plaintiff engaged in the Protected Activity. (Doc. No. 1 at ¶¶ 24-28). So Act 1 is a non-starter.

---

[29] The Court herein will refer to the conduct underlying Act 3—directing Plaintiff not to return to work and thereafter refusing to assign Plaintiff to another position—as Plaintiff's "Constructive Termination," consistent with Plaintiff's terminology. But despite using this terminology, the Court notes that it is *not* accepting as true any assertion that Defendant's directing Plaintiff not to return to work and thereafter refusing to assign Plaintiff to another position technically amounts to "constructive termination" within the meaning of any legal constructs that turn on whether there has been construction termination; any such assertion would be a legal conclusion and thus something the Court does not accept as true under *Iqbal* and *Twombly*.

A retaliation claim likewise cannot be based on Act 2. The filing of a Position Statement, even one that includes false information, does not amount to a materially adverse action. In the retaliation context, an adverse employment action is anything that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). Other courts have persuasively concluded that the filing of an EEOC position statement cannot amount to a materially adverse action for purposes of a retaliation claim, as such a filing is routinely submitted in response to an EEOC discrimination filing. *See Guity v. Uniondale Union Free Sch. Dist.*, No. CV 12-1482 (SJF) (AKT), 2014 U.S. Dist. LEXIS 45803, 2014 WL 1330636, at *19 (E.D.N.Y. Feb. 28, 2014) (finding that submission of a position statement is a routine matter and that defendant's submission did not constitute a materially adverse employment action). This Court agrees, finding that the Defendant's filing of its Position Statement (Act 2) did not amount to a materially adverse action but rather was a necessary step taken in furtherance of litigating Plaintiff's claims. Even accepting as true—as is required at the instant motion-to-dismiss phase—Plaintiff's allegation that the EEOC filing included false information (Doc. No. 1 at ¶ 41), the Court's conclusion remains the same. The Court is unconvinced that a reasonable person would be dissuaded from making or supporting a charge of discrimination out of fear that an employer would take the commonplace and entirely predictable measure of filing a position statement with the EEOC—in response to an employee filing a charge of discrimination with the EEOC—that contradicts some of employee's assertions.[30]

---

[30] This is not to say that the Court adopts the position that the filing of a position statement could *never* amount to a materially adverse action. But presently, the Court is not convinced the Defendant's Position Statement rises to such a level.

But Act 3 fares much better. In terms of Act 3, the second element of a retaliation claim requires that Defendant had knowledge of Plaintiff's Protected Activity when Defendant engaged in the Constructive Termination. Accepting Plaintiff's factual allegations as true, the Court finds that Plaintiff alleged facts plausibly suggesting that the Constructive Termination occurred after Defendant learned of Plaintiff's Protected Activity. More specifically, Plaintiff alleged in her Complaint that "Plaintiff engaged in [a] protected activity when she complained to management," (Doc. No. 1 at ¶ 52), that "Defendant knew of this protected activity," (*Id.* at ¶ 53), and that "Defendant *subsequently* took an adverse action against Plaintiff by . . . refusing to offer her any clerical assignments after she made complaints of harassment . . . [and] retaliated against Plaintiff because of her protected activity by . . . constructively terminat[ing] her employment," (*Id.* at ¶¶ 54, 64 (emphasis added)). Importantly, the Court acknowledges that Plaintiff's statement that "Defendant knew of this protected activity" (Doc. No. 1 at ¶ 53) could be viewed as conclusory and need not be accepted by this Court as true. Even ignoring such statement, the Court reaches the same result, finding it reasonable to infer that Defendant knew of such report (i.e., the Protected Activity) from Plaintiff's allegation that she reported the harassment to her manager.[31]

---

[31] The Court recognizes a lack of clarity in the case law discussing whether reports of harassment to a manager/supervisor suffice to impute knowledge of such reporting to the employer. *Compare Abbott v. Crown Motor Co.*, 348 F.3d 537, 543 (6th Cir. 2003) ("[The plaintiff] thus established that he engaged in protected activity when . . . he notified [his manager] that he had witnessed [another employee's] racial discrimination and would testify to it in a court of law. Since [the] plaintiff made this disclosure to [his manager], [the employer] knew of this participation [by the plaintiff in the protected activity]."); *and Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-cv-555, 2020 U.S. Dist. LEXIS 67765, at *18 (S.D. Ohio Apr. 17, 2020) ("Case law suggests that when an employee engages in protected activity by reporting discrimination or harassment to a supervisor, that is sufficient to impute knowledge about that activity to the employer."); *and Alexander v. Univ. of Kentucky*, No. 5:10-cv-48-REW, 2012 U.S. Dist. LEXIS 46173, 2012 WL 1068764, at *16 (E.D. Ky. Mar. 28, 2012) (finding, at summary judgment, that the employer knew about protected activity when an employee reported discrimination to the defendant's Assistant Vice President of Institutional Equity, because she "was [the defendant's] employee acting in an official capacity when she received those complaints, there can thus be no dispute that [the defendant] knew

The Court turns next to the third element, i.e., whether the Constructive Termination amounts to a materially adverse action. Adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761. It should involve change that is "more disruptive than a mere inconvenience or alteration of job responsibilities." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (internal citations omitted). In the retaliation context, an adverse employment action is anything that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (citations omitted). "Examples of materially adverse actions are 'a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities.'" *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 470 (6th Cir. 2012) (quoting *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000)). The Sixth Circuit has explicitly "recognized that the standard for showing a materially adverse action is not onerous," but rather prescribes only a low bar. *Henry v. Abbott Labs.*, 651 Fed. Appx. 494, 504 (6th Cir. 2016).

---

of" the employee's protected activity); *with Reynolds v. Fed. Express Corp.*, No. 09-2692-STA-cgc, 2012 U.S. Dist. LEXIS 172751, at *19 (W.D. Tenn. Dec. 4, 2012) (finding that Sixth Circuit precent implies that "the knowledge required under the second prong . . . is actual knowledge, not imputed or constructive knowledge."); *and Zellia v. Kohl's Dep't Stores, Inc.*, 2022 U.S. Dist. LEXIS 60653, at *22, 25 (N.D. Ohio Mar. 31, 2022) (finding that knowledge of a report of harassment to a peer with no supervisory role could not properly be imputed to the employer.).

Importantly, Defendant has the burden of explanation. Since the movant is the one seeking dismissal, it is the one that bears the burden of explaining—with whatever degree of thoroughness is required under the circumstances—why dismissal is appropriate for failure to state a claim. Defendant could have, but did not, attempt to explain why Plaintiff's manager's knowledge of her protected activity (the reporting to her manager) should not be imputed to Defendant.

The Court concludes that Plaintiff has alleged facts plausibly suggesting a materially adverse action through her Constructive Termination. First, as illustrated above, termination of employment is a prime example of a materially adverse action. Whether or not Plaintiff's Constructive Termination amounted to "constructive termination" in any legal or technical sense, the nature of the Constructive Termination—directing Plaintiff not to return to work and thereafter refusing to assign Plaintiff to another position—plausibly suggests de facto termination of a type typically treated as an adverse employment action. But more importantly, the Court finds it plausible that the Constructive Termination clears the low bar for establishing a materially adverse action, i.e., plausibly suggests that a reasonable person would be dissuaded from reporting discrimination by the prospect of being directed not to return to work and not receiving a new (replacement) position.

That leaves the final element of an indirect-evidence prima facie case of retaliation, i.e., a causal connection "between the protected activity and the materially adverse action." *Laster*, 746 F.3d at 730. Retaliation claims under both Title VII and § 1981 require but-for causation, *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 489 (6th Cir. 2020), requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (clarifying that in the context of Title VII retaliation claims, the proper test for causation is a "but-for" test). Put another way, the fourth element of a retaliation claim requires Plaintiff to plausibly plead that "but for" a retaliatory motive, Defendant would not have taken the adverse action. Even though this "but for" standard presents a higher bar than do other standards for causation—such as the "contributing factor" standard—at the present (motion-to-dismiss) stage a plaintiff still need only satisfy the plausibility standard of *Iqbal* and *Twombly*. *See House v. Rexam Beverage Can Co.*, 630 F. App'x 461, 462-63

(6th Cir. 2015) (noting that the plausibility standard from *Twombly* and *Iqbal* "applies to the element of causation in discrimination claims"). And the Court keeps in mind that "[t]he burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523 (6th Cir. 2008) (internal quotation marks omitted).[32]

Under Sixth Circuit precedent, temporal proximity alone can satisfy the causation element if the "adverse employment action occurs very close in time after an employer learns of a protected activity." *Id.* at 525 (6th Cir. 2008) (finding temporal proximity to be sufficient evidence of causation where termination occurred on the same day that the employer learned of the protected conduct). In other words, "where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise."[33] *DiCarlo v. Potter*, 358 F.3d 408, 421 (6th Cir. 2004) (collecting cases), *overruled on other grounds*, *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180 (2009). However, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Mickey*, 516 F.3d at 525. As for what is meant here by "some time," the Court concludes

---

[32] The Court keeps in mind that although this burden is not onerous, a plaintiff who relies on temporal proximity alone cannot establish a prima facie case unless that proximity is "very close," *Wheeler v. Miami Valley Career Tech. Ctr.,* No. 22-3315, 2023 WL 142266, at *2 (6th Cir. Jan. 10, 2023) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam)). As to what is meant by "very close" in proximity, the Court concludes below (albeit imprecisely) that "very close" means within a few months.

When temporal proximity alone does *not* suffice to show causation, then (as makes perfect sense) "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement [her] claim with other evidence of retaliatory conduct to establish causality." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010) (internal quotation marks and citation omitted).

[33] In context, it is clear that *DiCarlo* was referring here specifically to an inference of the existence of the fourth (causal connection) element of an indirect-evidence prima facie case of retaliation.

(regrettably, but unavoidably, with inexactitude) that "some time" means anything beyond a few months. *See Navarro-Teran v. Embraer Aircraft Maint. Servs. Inc.*, 184 F. Supp. 3d 612, 622 (M.D. Tenn. 2016) ("While it is true that the Sixth Circuit has allowed mere temporal proximity to establish causation for retaliation claims, it has only allowed that in cases in which the time elapsed between the protected activity and the retaliation was on the order of days, or at most, a few months.").[34]

   In the present case, and at the present stage, it is at least inferable that but for a retaliatory motive, Defendant would not have undertaken Plaintiff's Constructive Termination. Although the

_____

[34] Overall, it appears that in this Circuit, courts have found periods of two to three months to be sufficiently close to support an inference of retaliation, but generally have found to the contrary when the period in question was longer than four months. *See Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409 (6th Cir. 2014) ("We have found sufficient evidence of a causal connection where the time between when the employee's leave expired or the employee requested leave and the employee's termination was two to three months." (collecting cases)); *Flagg v. Staples the Off. Superstore E., Inc.*, 138 F. Supp. 3d 908, 918 (N.D. Ohio 2015) (noting that "for more than three months beyond the expiration of leave, the Sixth Circuit has held no inference of a causal connection may be drawn" (collecting cases); further opining that "[i]n light of the above Sixth Circuit holdings, temporal proximity of five months is insufficient to establish a causal connection in and of itself."); *Parnell v. West*, No. 95-2131, 1997 WL 271751, at *3 (6th Cir. May 21, 1997) (noting that "previous cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months") (unpublished); *e.g. Leavy v. FedEx Corp.*, No. 19-CV-2705-JTF-tmp, 2021 WL 4171454, at *9 (W.D. Tenn. Feb. 18, 2021) (finding that a period of four months, without more, was too long to establish retaliation), *report and recommendation adopted*, (W.D. Tenn. Aug. 23, 2021), *aff'd*, No. 21-5882, 2022 WL 19039658 (6th Cir. Dec. 20, 2022); *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 308-09 (6th Cir. 2016) (noting that a period of seven months was too long); *Wallner v. Hilliard*, 590 F. App'x 546, 554 (6th Cir. 2014) (reversing district court's finding that the time period was too long to support a causal connection, because the relevant time period was actually nine days rather than four months as the district court erroneously found); *Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272-73 (6th Cir. 1986) (finding that four months was too long to establish an inference of retaliation); *Sesson v. United Parcel Serv., Inc.*, No. 22-5564, 2023 WL 4864283, at *4 (6th Cir. July 31, 2023) (noting that one year and one month was too long); *Nolen v. FedEx Servs.*, No. 13-6245, 2014 WL 12887530, at *3 (6th Cir. May 28, 2014) (finding that nine months was "simply too long of a time period for temporal proximity alone to support an inference of retaliation"); *Clark v. Walgreen Co.*, 424 F. App'x 467, 473 (6th Cir. 2011) (finding that three months was not too long); *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 550 (6th Cir. 2008) (finding that three months was a period short enough to "support[] an inference of a causal connection"); *Bryson v. Regis Corp.*, 498 F.3d 561, 571 (6th Cir. 2007) (finding that a period of three months was not too long); *O'Gwynn v. Rutherford Cnty., Tenn.*, No. 3:17-CV-00503, 2018 WL 5830834, at *3 (M.D. Tenn. Nov. 6, 2018) (finding that five months was too long); *Brown v. ASD Computing Ctr.*, 519 F. Supp. 1096, 1116 (S.D. Ohio 1981) (finding that three months was too long), *aff'd sub nom. Brown v. Mark*, 709 F.2d 1499 (6th Cir. 1983).

Court does not accept Plaintiff's conclusory allegations pertaining to causation as true, the Court nonetheless finds that Plaintiff has alleged enough facts for her Title VII and Section 1981 claims to survive a motion to dismiss, albeit a close call. Plaintiff alleged that she reported the harassment to Defendant and was thereafter constructively terminated. (Doc. No. 1 at ¶¶ 28, 33, and 37-38). Although Plaintiff did not explicitly state the timeline between Plaintiff's report of the harassment to Defendant and the subsequent constructive termination—construing the Complaint in the light most favorable to Plaintiff—the Court can reasonably infer that the constructive termination occurred at some time after Plaintiff's September 5 report, but before Plaintiff provided her written statement to Defendant on September 7.[35] Therefore the Court infers that the temporal proximity between the Protected Activity and the Constructive Termination is but a few days, making it appropriate for the Court to rely on temporal proximity alone to establish causation.

The Court will wrap up by briefly addressing Defendant's assertion in its Memorandum that its "instruction to Plaintiff not to return to the assignment was out of concern for Plaintiff's safety and wellbeing and was not grounded in any retaliatory motive." (Doc. No. 11 at ¶ 19). Although Defendant may be able to later prove a non-retaliatory motive as a defense to the claim of retaliation (for example, as part of a *McDonnell Douglas* analysis at the summary judgment stage), consideration of Defendant's version of the facts (a version that of course is not yet even evidentially supported) at the instant motion-to-dismiss phase is entirely inappropriate. *See Coats*

---

[35] The Court can reasonably infer that Plaintiff was pleading in chronological order by virtue of the Complaint's structure. Of relevance, Plaintiff first alleged that she reported the harassment to Defendant on September 5, 2023. (Doc. No. 1 at ¶ 28). Plaintiff thereafter provided further detail about the conversation wherein she made the report, eventually stating that "Defendant Luxor instructed Plaintiff not to return to Pyramids and assured her they would find her another position." (*See id.* at ¶¶ 29-33). Immediately thereafter, Plaintiff alleged that on September 7, 2023, she went to Defendant's office to provide a written statement (*Id.* at ¶ 34). Viewing the Complaint in the light most favorable to the Plaintiff, the Court finds it permissible and appropriate to infer that Defendant's instruction to Plaintiff not to return to Pyramids occurred as part of the September 5, 2023, conversation, but at a minimum occurred prior to Plaintiff providing an in-person written report on September 7, 2023.

*v. McDonough*, No. 3:20-CV-00298, 2021 WL 5846550, at *4 (M.D. Tenn. Dec. 9, 2021) ("[T]he *McDonnell Douglas* framework contemplates that a defendant can, if necessary, attempt to prevail by setting forth its position on a factual issue (i.e., as to the existence of a legitimate, non-discriminatory reason for its challenged employment actions). But except perhaps in a very limited sense . . . a defendant's position regarding the facts simply is not [to] be considered on a Rule 12(b)(6) motion to dismiss." (Richardson, J.) (internal citations omitted)). This is because at the present pleading stage, Plaintiff need only allege facts plausibly suggesting that but for a retaliatory motive, Defendant would not have taken the materially adverse action. The Court finds that Plaintiff has done so.

In sum, the Court finds that, although the reduction in pay and Defendant's filing of its Position Statement with the EEOC do not support a claim of retaliation, the Court finds that Plaintiff has plausibly alleged facts to support a claim of retaliation as it relates to the constructive termination and failure to reassign Plaintiff thereafter. So the Court will deny the motion with respect to Plaintiff's claims of retaliation.

<u>CONCLUSION</u>

For the reasons indicated herein, the Court will **DENY** Defendant's Motion to Dismiss (Doc. No. 10) in its entirety.

An appropriate corresponding order will be entered.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE